WILLIAM R. WILKINSON, Plaintiff in Error, *v.* JOSIAH STEWART, and JAMES FACKNEY, Defendants in Error.

ERROR TO WABASH.

When county bonds have been deposited by a railroad company with its president, under an agreement with an accommodation indorser, that the bonds should be held for the purpose of paying notes which had been indorsed for the benefit of the company, the president becomes a trustee, independent of his official character, and is personally responsible for the execution of the trust. In such a case it will be no defense for him to allege that he was directed by the corporation to make another disposition of the bonds.

An indorser, who takes up and cancels the indorsed paper by giving a new obligation, has a right to regard this as a payment, and to call upon his principal for indemnity.

THIS was a suit in equity, by defendants in error, to enforce a trust against plaintiff in error.

The bill stated that Stewart and Fackney, on the 13th of May, 1859, indorsed, for accommodation only, a bill of exchange, drawn by J. C. & D. N. Stanton, on the cashier of the bank at Vincennes, in favor of defendant, for $2,060, payable three months after date, at the branch of the Bank of Indiana at Vincennes; that said bill was discounted at Mt. Vernon, Ind., and the proceeds applied to the use of the Illinois Southern Railroad Company. The said bill not being paid when due, was protested for non-payment. That on the 25th of October, 1859, the said Illinois Southern Railroad Company, to protect the defendants against their liability on said bill, and to provide for payment thereof, delivered to plaintiff (Wilkinson) one hundred and fifty Wabash county bonds, amounting to $15,000, which were accepted by him in trust, for the purpose of paying certain notes given by S. H. Martin, J. Fackney, J. Stewart, G. Williams, I. N. Jaquess and others, as makers or indorsers, viz.: five notes, for about $4,000, and then lying in the Mt. Vernon Bank; and three others for about $5,000, negotiable at the Canal Bank at Evansville. That the said bill of exchange was one of the claims last aforesaid, and said bonds were to be sold and disposed of as soon as possible for the payment of said notes.

Wilkinson's receipt is as follows:

"Received of the Board of Directors of the Illinois Southern Railroad Company, the following bonds of Wabash county, viz.: Nos. 201 to 350 both inclusive, making 150 bonds, each for one hundred dollars, which bonds have been specially set apart by the said company for the express purpose of paying certain notes given by S. H. Martin, James Fackney, Josiah Stewart, George Williams, I. N. Jaquess and others as makers or indorsers, viz.: five notes for about $4,000 and now lying in Mount Vernon bank, and three notes for about $5,000 and negotiable at the Canal Bank at Evansville, with interest, cost, etc., and which bonds have been placed in my hands as trustee for said makers and indorsers of said notes, to sell and dispose of as soon as possible, and

apply the proceeds thereof in payment of said notes as afore-
said, and account with the treasurer of said company for any
surplus which may remain in my hands; this receipt is given
in duplicate.

*October* 25, 1859.                         W. R. WILKINSON."

The bill also charged that plaintiff refused to execute the
trust, and had surrendered the bonds to the railroad company
in violation of the trust, and the same had thereby been lost
to defendants, and they had been compelled to settle and pay
the said bill of exchange with interest, etc.

Wilkinson, Martin, Williams, Jaquess, and the Illinois
Southern Railroad Company, were made defendants, and a
decree prayed against Wilkinson to enforce the trust, or to
pay said Stewart and Fackney, and the other makers and
indorsers of said notes, the amount paid out by them on that
account.

Wilkinson and Williams answered, and default as to the
other defendants below.

The answer of Wilkinson admits that Stewart and Fackney
indorsed the bill for accommodation; admits he received the
$15,000 of bonds and executed the receipt therefor; that the
bonds were to secure said parties, and to be sold for that pur-
pose. He denies that he refused to execute the trust, but that
before he could sell the bonds and apply the proceeds as first
directed, the orders of said company of the 15th and 16th of
Februrary, 1860, were made, authorizing the sale of the bonds
to pay interest on the county bonds; and exhibits copies of
the orders as follows:

1st. By order of October 24, 1859, at Mt. Carmel, $15,000
of Wabash county bonds, Nos. 201 to 350, were set apart for
the express purpose of paying off certain notes made by S.
H. Martin, James Fackney, Josiah Stewart, George Williams,
I. N. Jaquess and others, as makers or indorsers (five notes
for $4,000, at Mt. Vernon, and three for $5,000, at Evansville),
and that the president of the company act for the said makers
and indorsers as their special agent and trustee, to sell said
bonds and apply the proceeds thereof to said notes.

2nd. By order of February 16, 1860, at Carmi, the presi-

dent of said company was authorized to pay to the county of Wabash $8,000 falling due from said company to said county, on March 20, 1860, as per contract, and also to pay certain notes, one by Jaquess and Martin for about $1,000, and sundry other notes made by Martin, Williams, Fackney, Stewart and others, for which purpose he was authorized to use the county bonds, private subscriptions, and land bonds, as in the judgment of said president should seem best.

3rd. By order subsequently made, the said board of directors declared, that whereas at a meeting of said board on the 15th and 16th of February, 1860, an order had been made authorizing the president to apply certain bonds, subscriptions, etc., as specified in their order, and whereas doubts have arisen as to whether under said order the president had a right to apply certain bonds placed in his hands as special trustee by order of October 24, 1859; therefore it was resolved that the bonds set apart by the order of October 24, 1859, "were intended to be included in the assets to be applied to the payment of interest due the county of Wabash, and for other purposes so ordered to be applied by said president."

And by the amended answer he denies the payment of the bills and calls for proof; also states that of the $15,000 county bonds received by him, about $9,000 were disposed of for the benefit of the county on account of interest, and about $6,000 for paying divers notes, on which plaintiffs below and others were liable.

The answer of Williams confesses the allegations of the bill, and also the receipt of $11,000 of land bonds.

The cause was heard on bill, answers, exhibits, and oral testimony.

*Peter Clark* testified, that he was attorney of the railroad company; in March, 1860, a trust deed and thirty-six land bonds, of $1,000 each, were made out by him. Williams came up to Mt. Carmel to execute them as secretary; it was at witness's room. Williams refused to execute the bonds and deed of trust because he said they had used the $15,000 of bonds placed in Wilkinson's hands for the protection of

himself and friends, and he refused to execute the papers unless he and his friends were secured.

After Wilkinson promised to give the eleven bonds he executed the papers.

Land bonds had no market value; county bonds were worth eighty cents. Williams was secretary, and had custody of the papers. A bond being introduced, witness said, that is one of the thirty-six land bonds.

*I. N. Jaquess* testified, that he was present when the orders of the Illinois Southern Railroad Company were made; the one appropriating the $15,000 county bonds to pay interest, was made at Carmi; Fackney was present and objected to the arrangement, saying he had friends who would object, but he said unless the interest was paid on the bonds they would become of no value, and I think at last rather waived his objection. Was present when Williams refused, at Mt. Carmel, to execute the deed of trust and the bonds, because he said he had friends that were interested. He did not name them, but I knew who they were.

Fackney was not a member of the board on the     day of February, 1860. The amount of interest due on county bonds was about $8,000. Don't know if it is yet paid; the Stantons were to have paid it.

*J. C. Stanton* testified, that he received $15,000 Wabash county bonds. Sent $9,000 East to his brother. At first hypothecated them at forty cents. Gave a mortgage on property to raise the money; afterwards sold bonds, and paid about $4,000 interest and $4,000 debts. The notes paid at Evansville and the interest were paid with Wabash county bonds.

Witness here presented one note of $2,000, dated June 16, 1859, signed by J. Fackney and I. N. Jaquess, and four for $500 each, made by Fackney and S. H. Martin, dated June 16, 1859. Thinks they were paid shortly after due; gave an acceptance East; it was after the order at Carmi. Had a conversation with Fackney in his store at Carmi. He asked me why I did not pay the notes in Mt. Vernon. I replied, the company had furnished no money. He said they gave

up the bonds for that purpose. Had a conversation with Williams in Mt. Carmel; told him that Wilkinson proposed I should give a mortgage on the Stanton House; but Jaquess objected, as he wanted part of the bonds, and the arrangement was not made. In this conversation he (Williams) said the county bonds had been given up, but did not say by whom.

Being re-called, witness testified further: I paid the notes in Evansville Bank, in December, 1859, and it was after the notes were paid that the conversations were had with Fackney and Williams; did not understand them to say they had relinquished their claim to the bonds given Wilkinson in trust for them.

By the contract, they (J. C. & D. N. Stanton) were to pay the interest on the Wabash county bonds, and the notes in the Evansville and Mt. Vernon banks, and for that purpose were to take the Wabash county bonds at their face. The bonds received from Wilkinson for the purpose were sent East to brother; whether they were used to pay interest and notes don't know, as the business was managed by my brother. Wilkinson was East at same time, and acted with my brother in the matter.

*I. S. Johnson* testified, that Wilkinson had returned, at January term, $4,000 of coupons, which were canceled, and that afterwards over $1,000, perhaps $3,000, more had been returned for interest paid, but don't know by whom.

*W. M. Gray* testified: he was present at meeting of board in Carmi, when the order was passed to pay interest with bonds in Wilkinson's hands. Fackney was present; was no longer a member of the board and had no control over the matter, but said if the board wished to use those bonds they ought to take up the note at Mt. Vernon; never gave consent, nor did Stewart ever consent, so far as witness knew.

*A. R. Shannon* testified: he was one of the trustees in deed; came to Mt. Carmel, March, 1860, when the bonds and deed were to be executed, at Clark's room, in Mansion House. Williams objected to execute them, because he and his friends had been treated badly; he said that the company had dis-

posed of the bonds which had been set apart for their security, Wilkinson made an appeal to him, saying he was secretary and ought to execute the papers. Williams still objected, and said they ought to have paid the note. Wilkinson proposed to give him eleven of the land bonds as security, and Williams then executed the papers as requested.

Copy of note mentioned in bill :

" Exchange for $2,060.

" CARMI, ILLINOIS, May 12, 1859. Three months after date of this first of Exchange, second of same tenor and date unpaid, pay to the order of Josiah Stewart, James Fackney, and George Williams, two thousand and sixty dollars, at the Branch of the Bank of the State of Indiana, at Vincennes, Ind., without any relief whatever from valuation and appraisement laws, for value received, and place same to account of your obedient servants,

" To Cashier Bank Vincennes,       J. C. & D. N. STANTON."
        Vincennes, Ind."

Indorsed : " Josiah Stewart, James Fackney, George Williams."

Also : " This note was paid by S. H. Martin's acceptance, indorsed by Josiah Stewart, and George Williams, dated June 13th, payable at Bank at Mt. Vernon, $2,082.60, at three months."

The decree declares that the said Stewart and Fackney, and Williams, paid the bill of exchange, amounting to $2,082.60, and orders that Wilkinson pay that amount to them.

Wilkinson brings the case to this court by writ of error, and assigns the following errors :

1. The decree is contrary to law.

2. It is contrary to equity.

3. The decree should have been in favor of Wilkinson for costs.

4. The decree is unsupported by evidence.

A. KITCHELL, for Plaintiff in Error.

The facts are, in brief, these : Stewart, Fackney, Williams, Martin, Jaquess, and others, were accommodation indorsers of the Illinois Southern Railroad Company, of which Wilkinson was president, Williams, secretary, Clark, attorney, and J. C. & D. N. Stanton were contractors. The company had

received and disposed of in part Wabash county bonds, the interest on which by contract the company was to pay, and by contract between the company and the Stantons the latter were to pay.

On the 24th of October, 1859, to secure the indorsers against loss, the company placed in the hands of their president one hundred and fifty Wabash county bonds ($15,000) to be applied to paying the notes and bills on which they were liable.

For these bonds Wilkinson receipted in his own name as trustee, etc.

Before these bonds could be sold and applied as thus ordered, it became necessary to provide for the interest due the county on March 26, 1860, amounting to $8,000, and to this end the company made an order on the 16th of February, 1860, authorizing the president to use the $15,000 of bonds placed in his hands in trust for the indorsers. These bonds were accordingly delivered to J. C. Stanton, and sent East to his brother. They were first hypothecated at forty cents, and finally disposed of at about $4,000 towards interest on the county bonds, and about $4,000 towards debts on which the indorsers were liable. Stanton paid the notes first by an acceptance East, and used the bonds on that account afterwards. When the order was made at Carmi to use the bonds toward interest, Fackney objected, but at last agreed that the interest should be paid, and seemed to waive his objection.

After the bonds had been used for interest, etc., and when Williams was called on as secretary to execute the deed of trust and land bonds, he refused, because the $15,000 county bonds had been disposed of contrary to the trust, and until, by a new agreement for security, he received eleven thousand dollars of land bonds, which he still holds; by which act, we insist, he released Wilkinson from the trust, if one existed, so far at least as he (Williams) is concerned.

The complainants below pretend they paid the bill of exchange at Mt. Vernon, and they produce it canceled, but the indorsements on it show that it was paid by the acceptance of

S. H. Martin at three months, indorsed by Stewart and Williams.

The plaintiff now insists :

1. That the order setting apart the $15,000 county bonds, and his receipt therefor, did not create a trust beyond the control of the railroad company, and when the order was subsequently changed, the said plaintiff being all the time president of the company, of which defendants all knew, he as its officer was bound to obey the orders of the board of directors, and was therefore not personally liable as a trustee. Adams' Equity, 29, 39 ; 2 Story's Equity, secs. 1045, 1036 ; Ib., note 3, sec. 972, p. 301.

2. If it should be held, however, that a trust was created beyond the control of the railroad company, then it is further insisted, that there is no sufficient proof that Fackney, Stewart and Williams paid the bill. The production of the bill by Stewart and Fackney on trial, might furnish *prima facie* evidence that they had paid it, but certainly not that Williams had paid any part. Williams in his answer does not pretend to have paid it, in whole or in part; besides, the indorsements show that it was paid by the acceptance of Martin, indorsed by Williams and Stewart, clearly showing that Fackney had no share in the payment.

3. If the proof of payment shall, however, be regarded as sufficient, then we insist that as to Fackney, by his statement, at the time of making the order of 16th of February, 1859, for applying the bonds towards interest, that the interest should be paid, he thereby encouraged the making of said order and such application of the bonds by Wilkinson, and he cannot in equity now hold Wilkinson liable for violating the trust. And that as to Williams, he, by a new agreement with Wilkinson, president of the company, discharged and released all claim on the trust by the acceptance of the $11,000 of land bonds, and he was, therefore, not entitled to any decree in his favor.

WALKER, J. The county bonds were specifically pledged, as an indemnity against the liability of the accommodation

indorsers of the bill.   The pledge was made by the action of the directors of the railroad company.   And appellant acknowledges in his receipt, that he had received the bonds, for the purpose of paying this and other notes.   That they were placed in his hands, as a trustee of the makers and indorsers, to be sold and disposed of by him, as soon as possible, and the proceeds to be applied in payment of the notes, and to account for any surplus which might remain, to the treasurer of the company.   The nature of the transaction, the declaration of the trust in the receipt, exclude the supposition, that this was not designed as a trust fund.   That it was such, and appellant was a trustee, subject to all the duties and liabilities imposed by that relation, is too obvious to admit of a doubt.

It is, however, insisted, that being the president of the company, appellant was bound to conform his action, in the sale of the lands, and the disposition of the funds, to the direction of the board of directors.   The action of that body, had created the trust, and had designated appellant as trustee, by an order entered upon their records.   When the transaction was consummated, it became a binding contract, irrevocable by any of the parties.   Appellant after that time did not hold the bonds under the control of the directors, but under the contract.   They had no power to alter, change or abrogate the trust, or in anywise alter appellant's duties or liabilities to appellees.   It only remained for the trustee to faithfully execute and perform the trust, or, on failing or refusing to do so, he would become liable for the breach of that duty.   The trust fund could not be diverted, unless by the full consent of all parties in interest.

Appellant assumed the position of trustee voluntarily, and in his individual, and not in his official character.   Having assumed the responsibility as an individual, his acts, his duties, and his liabilities, as such, were no more under the control of the board of directors, than would be those of one not connected with the company.   The duties devolving upon him as trustee, had no connection with those of president of the company.   He occupies the same position as he would, had he been a stranger to the company.   Having violated his

trust, he must be held liable, to the *cestuis que trust*, for any injury they may have sustained by his breach of duty.

It is also contended, that there is no evidence of the payment of the bill of exchange. It does appear that appellees took up, and had the instrument canceled, after it had matured and gone to protest. This was done by the substitution of other negotiable paper. It seems thus to have been fully discharged, and if so, it was equivalent to a payment. *Ralston* v. *Wood*, 15 Ill. 159; *Cox* v. *Reed*, 27 Ill. 434. The new paper was not given as security but as payment, resulting in the extinguishment of the bill of exchange.

The only remaining question is, whether appellees consented to the perversion of the trust fund. It nowhere appears that they ever in terms gave their consent. It only appears, that after the bonds had been misapplied, Williams was required, as the secretary of the company, to execute a deed of trust, on other funds, for the company, when he objected, on the grounds that he and his friends had been badly treated, by the perversion of this fund, and insisted that they should be secured out of the funds embraced in the trust deed. He consented, upon appellant assuring him, they should have eleven thousand dollars of land bonds for the purpose. This implies no consent or ratification of the breach of trust, but simply indicates a desire to secure himself and friends out of other property of the company.

So far from consenting, Fackney positively objected, to applying the trust fund to any other purpose, until the debts were paid. There were some remarks made by appellees, in reference to the bonds having been given up, but the witness did not understand by whom, or that appellees had released their claim on the fund. We can perceive nothing in the record which indicates their assent before, or ratification of the misapplication of the fund, after the transaction had transpired.

The decree of the court below must be affirmed.

*Decree affirmed.*