## ISAAC N. JACQUES *et al.*

*v.*

## JAMES FACKNEY *et al.*

1. SUBROGATION—*surety paying—right to creditor's securities.* Where a railroad company executed a deed of trust to secure a debt of the company to Beal of $1000, in which A was surety, and to indemnify A and B against liability as sureties of the company to C and D for the sum of $2000; and A, as such surety, was compelled and did pay such sums: *Held,* that A was entitled in equity to be subrogated to the rights of Beal under the deed of trust, and to have the deed of trust foreclosed to indemnify himself for the several sums so paid by him.

2. A railroad company being indebted to various parties, placed certain county bonds in the hands of its president, to be held by him in trust to secure such indebtedness. These bonds were subsequently withdrawn by the company, after the acceptance of the trust, and appropriated to other

purposes, and a deed of trust on certain lands executed to secure the same indebtedness. The president having surrendered the bonds, was held liable to certain creditors on account of his improperly parting with the bonds, and compelled to pay their debts: *Held,* that the president, having paid a-debt secured by the deed of trust, was also entitled to be subrogated to the rights of such creditors under the deed of trust; and there being no fraud shown in the surrendering of the bonds and their application in paying other debts of the company, that the president was not estopped from seeking such remedy.

3. SAME—*estoppel.* In such case the creditors were the only parties who could complain of the surrender of the bonds, and if they chose to resort to the personal liability of the president as trustee of such bonds, instead of relying upon the new security given by the trust deed, they ought not to object, when the trustee, after having paid their debt, only asks to be subrogated to the rights which they could have asserted under the deed of trust.

4. SAME—*as against purchaser with notice of the lien.* And when a part of the creditors whose debts were secured by the deed of trust, and which had been paid by those seeking subrogation, recovered judgments against the railroad company on other indebtedness, having notice of the deed of trust, and purchased part of the same lands included in the trust deed, at sale under executions issued on their judgments: *Held,* that the equities of the parties seeking such subrogation were superior to their equity.

5. In such case the court held that whatever amounts the execution creditors expended in payment of taxes, or in perfecting the titles to the lands included in the deed of trust, which inured to the benefit of the complainants, by way of protecting their security, ought to be refunded to them; and that if there were any lands included in the deed of trust not sold by such other creditors on their executions, they should be first subjected to the payment of the amounts due the complainants, and the lands sold on execution should be last offered for sale.

WRIT OF ERROR to the Circuit Court of Hamilton county; the Hon. JAMES M. POLLOCK, Judge, presiding.

Messrs. BELL & GREEN, for the plaintiffs in error.

Mr. C. S. CONGER, and Mr. T. B. TANNER, for the defendants in error.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill was to foreclose a mortgage, or deed of trust, executed by the Southern Illinois Railroad Company to Albert

R. Shannon, as trustee, on the twenty-first day of March, 1860, on certain lands in the counties of Jefferson, Hamilton, Johnson and Williamson, amounting in the aggregate to thirteen hundred and seventy-six acres, to secure the indebtedness of the company to the county of Wabash, in the sum of $8000; to Joshua Beal, $1000; to the plaintiff in error, Jacques, and Samuel H. Martin, as securities of the company, $2000, and to the defendants in error, Fackney and Williams, and Josiah. Stewart and Samuel H. Martin, as indorsers for the company, $2082.60.

The railroad company had previously placed in the hands of Wilkinson, its president, $15,000 in Wabash county bonds, to be by him held in trust as collateral security for the same indebtedness, to the same parties as that secured by the deed of trust.

These bonds were subsequently withdrawn, by order of the board of directors of the company, from the custody of Wilkinson and appropriated to other purposes.

Jacques was security for the company for the debt due to Beal, which was secured by the deed of trust, and was compelled and did pay the amount to him. He also paid the $2000 for which he and Martin were securities for the company, and for which provisions were made by the express terms of the deed of trust for their indemnity.

Wilkinson having surrendered the Wabash county bonds, by order of the company, after having accepted the trust, at the suit of Fackney, Williams & Stewart, and Martin, was held liable to and did pay the $2082.60, for which they were liable as indorsers for the company.

Fackney and Williams, the defendants in error, subsequently obtained separate judgments against the railroad company, in the circuit court of White county, on account of indebtedness other than that secured by the deed of trust, and on an execution issued on the judgment in favor of Fackney, the lands situated in the county of Hamilton, and covered by the deed of trust, were sold and purchased by him. In like

manner Williams caused the land in Jefferson county, covered by the deed of trust, to be sold, and at the sale became the purchaser.

It is admitted that both Fackney and Williams had actual notice of the deed of trust prior to the time of their respective purchases under their executions.

It was expressly provided by the deed of trust that the railroad company would pay the debt for which Jacques and Martin were sureties, within the period of one year. This he failed to do, and Jacques having paid the debt, he now seeks to foreclose the deed of trust to make the amount he so paid for the use of the company. Having been compelled to pay the debt of the railroad company to Beal, for which he was surety, he now asks to be subrogated to the rights of Beal under the mortgage.

It seems to us that there can be no question, so far as Jacques is concerned, that he is entitled to the relief sought by the bill. The deed of trust was executed in part to secure him as security for the railroad company, and having had to pay its indebtedness, no reason is perceived why he should not be permitted to foreclose it, and have the land subjected to sale for his indemnity. The mortgage was fairly executed, and for a lawful purpose. It was not made to delay or hinder the defendants in error, or any one else, in the collection of their just demands against the railroad company.

It is said that Jacques was one of the directors of the company, and was guilty of misconduct in ordering the Wabash county bonds, which had been previously pledged for the payment of this very indebtedness, to be surrendered up, and for that reason, his rights under the deed of trust should be postponed to the rights acquired by the defendants in error under their judgments, on the same lands.

The objection is not well taken. It was simply a change of securities, and we do not understand how the defendants in error can now interpose such an objection. So far as the change affected their individual rights they had their remedy

against the trustee and availed of it.   The lands, at the time
of the date of the execution of the deed of trust, were free
from any incumbrances, the defendants then not having ob-
tained their judgments, and the railroad company was at lib-
erty to pledge them for the payment of this specific indebted-
ness.

This objection, however, could not apply to Joshua Beal,
for he was in no manner connected with the surrender of the
bonds, and his debt due from the railroad company was ex-
pressly provided for by the deed of trust.   Jacques, as the
security for the company, having paid the debt, is entitled,
on   the   plainest   principles   of   justice,   to   be   subrogated
to the rights of Beal under the deed of trust, and there can
be no question that his equities in this regard are superior to
those of defendants in error.

The most serious question in the case arises on the question
of the relief sought by the plaintiff in error, Wilkinson.

The objection to the relief is placed upon the same ground
as to Jacques, that he was the trustee for the defendants, and
others, and improperly surrendered the bonds placed in his
hands for their security.   No injury, in fact, resulted to the
defendants in error by reason of the change in the securities,
for Wilkinson had to pay them the amount for which they
were indorsers for the company.

No doubt they could in the first place have resorted to the
lands covered by the deed of trust for their indemnity, but
they chose to proceed directly against the trustee, and when
the trustee seeks to be subrogated to the rights which they
may have had in the premises, it is insisted that he is in some
way estopped by having surrendered the original securities.
For what reason, or upon what principle he should be estopped,
it is not quite easy to understand.   The change in the securi-
ties was not made by the railroad company for any corrupt
purpose.   It is not denied that the proceeds of the bonds
went to the payment of other indebtedness of the company.
Any one injuriously affected by the change had his remedy

against the trustee. It was clearly a breach of duty for the trustee to surrender the securities without the consent of the *cestuis que trust,* for which he was held liable by the decisions of this court. *Wilkinson* v. *Stewart et al.* 30 Ill. 48.

But the *cestui que trust* is the only party that can complain, and if he chose to resort to the personal liability of the trustee, he ought not to object when the trustee, after having paid his debt, only asked to be subrogated to the rights which he could have asserted under the deed of trust. This, it seems to us, is the clear right of the trustee.

If the county bonds, which had been originally pledged for the indebtedness secured by the deed of trust, had been appropriated by the trustee to his own use, then there would have been great force in the objection that he would be estopped from asserting any rights under it, as against the defendants in error, who were *bona fide* creditors of the railroad company. Such was not the case. The appropriation and sale of the bonds reduced the *bona fide* indebtedness of the company in an amount corresponding with the amount realized.

It would certainly have been lawful for the railroad company to have secured the indebtedness, paid by the sale of the bonds, by the deed of trust, and we are at a loss to see why or how the defendants in error have been injured by the change in the security. No valid reason is perceived why the rights of the plaintiffs in error, or either of them, should be postponed to the rights of the defendants in error under their judgments.

It would be lawful for the plaintiffs in error to foreclose the deed of trust at any time before the indebtedness secured thereby was barred by the statute of limitations, and hence the doctrine of the cases cited on the question of *laches* can have no application.

Whatever amounts the defendants in error, or either of them, may have actually expended in the payment of taxes, or in perfecting the titles to the lands included in the deed of

trust, which have inured to the benefit of the plaintiffs in error, by way of protecting their security, ought to be refunded to them out of the estate.

If there are lands included in the deed of trust, and not sold by either of the defendants in error on their executions, they should be first subjected to the payment of whatever amounts may be found due to the plaintiffs in error, and the lands so purchased by the defendants should be the last offered for sale,

The decree will be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*